The plaintiffs, the ex-wife and child of a participant in the government’s Witness Protection Program (the "Program”), seek to recover damages from the defendant on the ground that by placing their husband/father in the Program the government made it impossible for them to collect from him support payments to which they were entitled. The defendant moves to dismiss the petition. We grant the motion.
In 1969, the plaintiff Patsy Thomas and her husband, William R. Thomas, had a child, the plaintiff Gregory Randall Thomas. In June 1974, the couple separated, and in July 1974, entered into a separation agreement in which Mr. Thomas agreed to pay child support. Mr. Thomas paid his support obligation only sporadically until May 1975, when he ceased making payments altogether.
From September 1976 until February 1977, Mr. Thomas participated in the Program. Following his testimony in several criminal trials, the government relocated Mr. Thomas from the "danger area” of North Carolina. The government also provided Mr. Thomas with subsistence during his participation in the Program. Mr. Thomas never requested, however, that the plaintiffs also be allowed to participate in the Program, and in fact they did not participate.
According to a government affidavit, the government lost contact with Mr. Thomas after May 1977, and has no knowledge of his present location.
The plaintiffs assert two claims. First, they contend that by placing Mr. Thomas in the Program, the government effected a compensable fifth amendment taking of their *986 property rights under the support agreement. Second, they claim that the government violated section 502 of the Organized Crime Control Act of 1970, Pub. L. No. 91-452, tit. V, 84 Stat. 933 (the "Crime Control Act”) by failing to provide for the plaintiffs’ "health, safety and welfare.”
1. The government seeks dismissal of the plaintiffs’ first claim on the ground that the government did not effect a compensable taking of the plaintiffs’ property. We agree.
In Omnia Commercial Co. v. United States, 261 U.S. 502 (1923), the plaintiff had a contract to purchase steel plate from a manufacturer at below market prices. Before the manufacturer could deliver the steel plate, the government requisitioned the plate for its own use. The plaintiff sought just compensation for the taking of its contract.
The Supreme Court held that the government had not taken the plaintiffs contract. "As a result of this lawful governmental action [the requisitioning of the steel] the performance of the contract was rendered impossible. It was not appropriated but ended.” 261 U.S. at 511. The Court ruled that "[frustration and appropriation are essentially different things” (id. at 513) and that the fifth amendment entitles a property owner to just compensation only for an appropriation. See also Kearney & Trecker Corp. v. United States, ante 571, 576, 688 F.2d 780, 783, (1982), cert. denied, 103 S. Ct. 1498 (1983); T.O.F.C., Inc. v. United States, ante at 182, 193, 683 F.2d 389, 395-96 (1982).
The present case is an even stronger one for determining that there was no taking. Here, the government’s lawful action did not appropriate the plaintiffs property (i.e., the right to support payments) or make its performance impossible (as was the case in Omnia). The support agreement is still enforceable against Mr. Thomas; by placing him in the Program the government merely made it more difficult for the plaintiffs to locate him.
It is not a relevant distinction (as the plaintiffs suggest) that cases such as Omnia deal with commercial contracts, whereas this case involves a support agreement. In neither situation has the government taken the property involved. The "government may execute laws or programs that adversely affect [but do not appropriate] recognized economic values,” without incurring a fifth amendment obliga *987 tion to compensate the owner. Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124 (1978); see also Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413 (1922). The fifth amendment does not compensate "consequential loss or injury resulting from lawful governmental action.” Omnia Commercial Co., 261 U.S. at 510.
The Court of Appeals for the First Circuit recently decided a similar question in Melo-Tone Vending, Inc. v. United States, 666 F.2d 687 (1st Cir. 1981). There the plaintiff sought just compensation from the United States on the theory that by placing its debtor, Mr. Aver, in the Program, the government made it impossible for the plaintiff to collect on Aver’s promissory note reflecting a loan the plaintiff had made to him, and that the government therefore had taken the plaintiffs right to repayment. In affirming the district court’s dismissal of the complaint, the court of appeals stated (666 F.2d at 689-90):
We recognize it is not unlikely that the consequential effect of governmental action in carrying out the program may be to delay, or make inconvenient or difficult, plaintiffs enforcement of Aver’s financial obligations while he continues in the program. However, the interference here with plaintiffs right to collect and enforce payment of the note cannot be characterized as a taking of its property.
Similarly, the government’s "interference here with [plaintiffs’] right to collect and enforce payment of [Mr. Thomas’ support obligation] cannot be characterized as a taking of [their] property.”
2. The government argues that we do not have jurisdiction over the plaintiffs’ second claim, which is that the government violated section 502 of the Organized Crime Control Act by failing to place the plaintiffs in the Program along with Mr. Thomas. We repeatedly have held that since the payment of compensation under the Program is discretionary with the Attorney General, we have no jurisdiction over claims that the Attorney General violated his obligations under the Program by failing to make payment to a participant in the Program. See, e.g., McFarland v. United States, 228 Ct.Cl. 819, 820 (1981), (and cases cited therein). We see no reason why the failure of the Attorney General to enroll in the Program the wife and child of a participant *988 is any less a discretionary action, the alleged breach of which does not state a claim within our jurisdiction.
Moreover, it is doubtful that the Attorney General could have enrolled the plaintiffs in the Program. Section 502 authorizes the Attorney General to enroll in the Program "witnesses, and the families of witnesses . . . whenever, in his judgment, testimony from . . . such a witness would place his life or person, or the life or person of a member of his family, ... in jeopardy.” There is no claim that Mr. Thomas’ testimony placed the "life or person” of either plaintiff "in jeopardy.” The plaintiffs’ contention is only that Mr. Thomas’ participation in the Program frustrated their efforts to enforce the support order against Mr. Thomas. As we have held, that allegation does not state a claim against the United States over which we have jurisdiction.
The government’s motion to dismiss the petition is granted, and the petition is dismissed.