In re Luther E. OLIVER, Debtor.

RESOLUTION TRUST CORPORATION, Receiver of Sooner Federal Savings and Loan Association, and Receiver of Sooner Federal Savings Association, Plaintiff,

v.

Luther E. OLIVER, Defendant.

Bankruptcy No. 89–43455–172.
Adv. No. 91–4034–172.

United States Bankruptcy Court,
E.D. Missouri, E.D.

Sept. 29, 1992.

Thomas M. Blumenthal, Eileen Love, Clayton, Mo., for Luther E. Oliver.

Douglas F. Behm, Theresa L.F. Levings, John T. Coghlan, Morrison & Hecker, Kansas City, Mo., for Resolution Trust Corp.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

The matters before the Court are the Motions For Summary Judgment on behalf of the Plaintiff and the Defendant. These findings and conclusions are based on a consideration of the record as a whole.

Plaintiff, the Resolution Trust Corporation ("RTC"), is a party to this proceeding in its capacity as the Receiver of Sooner Federal Savings and Loan Association and Sooner Federal Savings Association ("Sooner"). Luther E. Oliver, ("Debtor") filed for relief under Chapter 7 of the Bankruptcy Code on August 16, 1989. This adversary proceeding to determine dischargeability of a debt was filed on February 15, 1991.

On June 25, 1987, the Debtor executed a promissory note payable to Sooner for $300,000. As collateral for the note the Debtor executed a deed of trust to his personal residence in favor of Sooner. The deed of trust reflected that the property was free and clear of all liens except those set out on Schedule "C" attached to the deed of trust. Schedule "C" listed one existing lien to Boatmen's Bank of Concord Village ("Boatmen's") that secured a debt in the amount of $300,000. In fact Boatmen's held a second lien of a deed of trust on Debtor's residence that secured a separate debt in the amount of $100,000. This additional lien was granted to Boatmen's on June 11, 1987, fourteen days prior to the date on which the Debtor executed the note to Sooner. In October of 1990, during the pendency of this bankruptcy case, the Debtor entered into a contract to sell his residence for $640,000. The sale was closed in December of 1990. After paying off the notes to Boatmen's Bank and obtaining the release of the Boatmen's liens, the balance of the sale proceeds in the amount of $134,830.42 was applied to the Plaintiff's debt. As the balance owed was greater than the amount available from the sale proceeds, the Plaintiff held a deficiency in the approximate amount of $273,-532.08.

Plaintiff alleges that at the time he executed the deed of trust to Plaintiff, the Debtor falsely represented the status of the collateral with the intent to deceive the Plaintiff. Therefore, according to the Plaintiff, the debt should be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

The Debtor argues that the Plaintiff has failed to state a claim for relief because this Complaint was brought under Section 523(a)(2)(A), when it should have been brought under Section 523(a)(2)(B), because Debtor's alleged misrepresentations were statements respecting his financial condition. The Debtor continues that under Section 523(a)(2)(B), a debt based on statements concerning financial condition is not barred from discharge unless it is in writing and was used to induce the extension of credit. (Debtor's Memorandum in Opposition to RTC's Motion For Summary Judgment, p. 6.)

Thus, according to the Debtor's argument, even if Plaintiff had brought its Complaint under Section 523(a)(2)(B), Plaintiff could not recover in this matter because the misrepresentations were not in writing. The Debtor's argument continues that assuming that the alleged misrepresentations can be established, the Plaintiff would not be entitled to a judgment here, because the misrepresentations concerning his financial condition were oral and were not reduced to writing prior to the loan having been approved. Thus, Plaintiff cannot establish that it relied on the misrepresentation in granting the loan. According to the Debtor's argument, an oral misrepresentation of an individual's financial condition is not actionable under either Section 523(a)(2)(A) or Section 523(a)(2)(B). As noted below, the Court has determined that this result is not consistent with the Congressional scheme of Section 523.

Both parties have filed motions for summary judgment and memoranda in support thereof, as well as memoranda in opposition to the opposing party's motion.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See,* F.R.C.P. 56, as made applicable by Rule 7056, Federal Rules of Bankruptcy Procedure.

■ Financial condition is a term that is not defined in the Bankruptcy Code. The Debtor has argued that statements about a single asset in a bankruptcy case must be classified as statements of financial condition. If this argument is correct, a court must conclude that if such statements are not reduced to writing, they are not actionable under Section 523 of the Bankruptcy Code. The Court in *In re Sansoucy,* 136 B.R. 20 (Bankr.D.N.H.1992), addressed this question and concluded that "... it [was] unreasonable to believe Congress intended such an outcome." *Id.* at 23. Citing *Public Citizen v. Department of Justice,* 491 U.S. 440, 453–54, 109 S.Ct. 2558, 2565–66, 105 L.Ed.2d 377 (1989), the *Sansoucy* Court concluded that

> [w]here the literal reading of a statutory term would "compel an odd result" (cite omitted) we must search for other evidence of congressional intent to lend the term its proper scope.

*Id.* at 23.

On consideration of the record as a whole, the Court has determined that oral statements which misrepresent the status of a single asset are not *per se* statements respecting the debtor's or an insider's financial condition. Therefore, such oral statements may be the basis for a complaint to determine dischargeability under Section 523(a)(2)(A). *In re Sansoucy,* 136 B.R. 20 (Bankr.D.N.H.1992). See also *In re Pollina,* 31 B.R. 975, 977 (Bankr.D.N.J. 1983).

In support of his argument, the Debtor has relied on *Engler v. Van Steinburg,* 744 F.2d 1060 (4th Cir.1984) which held that, "A debtor's assertion that he owns certain property free and clear of other liens is a statement respecting his financial condition." *Id.* at 1061. Consequently, the Fourth Circuit concluded that such statements must be in writing to bar the Debtor's discharge. As noted below, a strict application of the requirement that such statements be in writing may produce re-

sults that are inconsistent with the Congressional scheme of Section 523.

In not accepting the Debtor's assertion that the *Engler* decision is controlling in this proceeding, the Court has noted that a major factual distinction exists between these two cases. In *Engler* the debtor's misrepresentations were singularly oral; all statements in the mortgages were correct. In the case being considered here, the Debtor made oral misrepresentations to the Plaintiff, and also submitted a written misrepresentation in the form of the mortgages. According to the *Engler* interpretation, this written representation would bar discharge under Section 523(a)(2)(B).

In the matter being considered here, the Debtor's representations concerning the liens on his home were not truthful. The discharge given debtors under Section 727 is intended only for honest debtors. The fraud exception to discharge was established

> to discourage fraudulent conduct and to ensure that relief intended for honest debtors does not inure to the benefit of the dishonest.

*In re Hunter,* 771 F.2d 1126, 1130 (8th Cir.1985), citing *In re Wilson,* 12 B.R. 363, 370 (Bankr.M.D.Tenn.1981).

If the *Engler* decision were strictly applied to circumstances as have been shown to exist in this case, a dishonest debtor could be granted a discharge of debts that were obtained by making false representations concerning collateral so long as the false representations were not in writing. This result is contrary to the purpose of the fraud exception to discharge.

Debtor also cites *In re Rhodes,* 93 B.R. 622 (Bankr.S.D.Ill.1988) which relies on *Engler.* In *Rhodes* the debtors filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court determined that according to the Complaint, when John A. Rhodes and Karol J. Rhodes, Debtors, made an oral application for extension of a loan, they failed to inform the Plaintiff of the existence of approximately $71,000 in debts owed to various creditors. The *Rhodes* court held that mere oral misstate-ments as to financial condition can never be a basis for excepting a debt from discharge. As in the *Engler* case, the facts in the *Rhodes* case are distinguishable from the facts in this case in that the Debtors' statements were not made in writing. The Debtor in this case submitted a written deed of trust that included misrepresentations.

■ Therefore, the Court has concluded that because a debtor's statement about a single asset is not *per se* a statement respecting the debtor's financial condition, in the circumstances presented here, the Plaintiff has correctly presented a complaint under Section 523(a)(2)(A); and that because this Debtor published a written statement that could be determined to be a statement respecting his financial condition, the Plaintiff could have appropriately brought its complaint under § 523(a)(2)(B) of the Bankruptcy Code.

■ In the circumstances presented here, the Court has determined that the Debtor's oral representations concerning a single asset, supported by his written representations, were not statements respecting his financial condition such that they may not be a basis for non-dischargeability under Section 523(a)(2)(A).

■ The standard of proof with respect to exceptions to discharge is the preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). For Plaintiff to succeed under Section 523(a)(2)(A) five elements must be established.

(1) that the debtor made false representations;

(2) that at the time made, the debtor knew them to be false;

(3) the representations were made with the intention and purpose of deceiving the creditor;

(4) that the creditor reasonably relied on the representations; and

(5) that the creditor sustained the alleged injury as a proximate result of the representations having been made.

*Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987).

The first element requires that the Plaintiff establish that the Debtor made false representations. This element is satisfied here because the Debtor falsely represented that Boatmen's held only one lien against his residence, and because the Debtor signed a deed of trust which falsely indicated that the property was subject to only one lien.

The second element requires that the Debtor knew the representations were false when they were made. This element is satisfied from a consideration of the record as a whole. Debtor completed the second Boatmen's loan only fourteen days prior to the date on which he executed the deed of trust with Sooner. When he signed the Sooner deed of trust he knew that the $300,000 lien to Boatmen's was not the only encumbrance on his home. Similarly, while he was negotiating with Sooner, he knew he was also negotiating with and completing an additional loan with Boatmen's. He also failed to disclose the Boatmen's negotiations to Sooner.

The third element requires proof that the false representations were made with the intent to deceive the creditor.

> Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred.

*Van Horne* at 1287.

The intent of a Debtor may therefore be inferred from the circumstances. The Court concludes that from the surrounding circumstances presented in this matter, the Debtor acted with the requisite intent to defraud. Debtor is an experienced business man. Even if the Court were to accept Debtor's statements in his affidavit (1) that Sooner prepared all loan documents, (2) that he believed Sooner knew of concurrent loan negotiations with Boatmen's, and (3) that he relied on Sooner's representations that it was obtaining title insurance, he ultimately signed a deed of trust which falsely represented the existence of only

one prior lien to Boatmen's. This written evidence overpowers any assumption of credibility that is to be attributed to the Debtor's assertions.

■■■■ The fourth element requires a showing that the creditor reasonably relied on the representations. As the Receiver of a banking institution, the RTC can rely on the records of the institution to create a presumption of reliance required for Section 523(a)(2). *D'Oench, Duhme v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *In re Stefanoff*, 106 B.R. 251, 256 (Bankr.N.D.Okla.1989); *In re Cerar*, 97 B.R. 447, 449 (C.D.Ill.1989). Thus based on Sooner's records, the Court has concluded that Sooner relied on Debtor's false representations. In cases under Section 523(a)(2)(A), the creditor must prove mere reliance, not reasonable reliance. *In re Ophaug*, 827 F.2d 340 (8th Cir.1987). Plaintiff has shown that members of Sooner's Investment Committee would not have approved the loan if they had known of the second Boatmen's lien. (Memorandum in Support of Resolution Trust Corporation's Motion for Summary Judgment, p. 21.)

The last element required for non-dischargeability is that the creditor sustained the alleged injury as a proximate result of the representations having been made. Debtor's misrepresentations caused Sooner to suffer a loss in the form of a deficiency after the collateral was sold. If the only other loan on the residence had been the note to Boatmen's in the amount of $300,-000, more money would have been available from the sale proceeds to reduce the debt to Sooner. Sooner was injured in that it suffered a larger deficiency that was the direct result of Debtor's misrepresentations.

■■■■ Debtor has also argued that Sooner promised that it would seek repayment of the debt from the many partnerships in which Debtor was a general partner rather than seek repayment from the Debtor personally, and that Sooner had said that it had no interest in foreclosing on Debtor's residence. If the Debtor's recollections of these promises are correct, it may be ar-

gued that the lien on the Debtor's residence was unnecessary. Even so, an allegation of a side agreement falls within the scope of 12 U.S.C. § 1823(e) as being an agreement that tends to diminish or defeat the interest of a party, in this case the RTC. A compromise of a claim in this manner can only occur when the strict criteria of Section 1823(e) are met. The Debtor has not alleged that this criteria has been met in this case. See, *Oliver v. Resolution Trust Corporation*, 747 F.Supp. 1351 (E.D.Mo.1990), involving the same parties and a consideration of Section 1823(a).

Therefore, based on the pleadings, depositions, answers to interrogatories, admissions and affidavits, and on a consideration of the record as a whole the Court has determined that there is no genuine issue as to any material fact, and that the Plaintiff as Movant is entitled to a judgment as a matter of law.

IT IS ORDERED that this matter is concluded; and that this is a final order on this motion and in this Adversary Proceeding; and that Plaintiff's motion for summary judgment is GRANTED; and that judgment on this Complaint is granted in favor of the Plaintiff and against the Defendant/Debtor; and

That the debt owed by Debtor to Plaintiff as set out in the Complaint is NOT DISCHARGED in this bankruptcy case as being a debt obtained by false pretenses and a false representation pursuant to 11 U.S.C. § 523(a)(2)(A).